**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK NICHOLSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-3274 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DONALD KRAMER, JAMES LEWIS, | ) | |
| PATRICIA BURKE, M.D., KATHLEEN | ) | |
| SANCHEZ, RON HAIN, and KANE | ) | |
| COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In his governing second amended complaint [62] ("Complaint"), Plaintiff Derrick Nicholson, Jr. ("Plaintiff") brings suit against Defendants Donald Kramer ("Kramer"), James Lewis ("Lewis"), Patricia Burke, M.D. ("Burke"), Kathleen Sanchez ("Sanchez"), Ron Hain ("Hain"), and Kane County, Illinois (the "County") under 42 U.S.C. § 1983 for injuries arising out of Defendants' alleged failure to treat his severe skin condition. Currently before the Court are motions to dismiss filed by the County [67], Lewis [68], Kramer and Hain [79], and Burke [86]. For the following reasons, the County's motion [67] is granted in part and denied in part; Count II of the complaint is dismissed but the County will remain a Defendant to Plaintiff's suit. Lewis' motion [68] and Burke's motion [86], which both raise the issue of whether Plaintiff properly exhausted his administrative remedies at the Kane County Jail, are denied without prejudice pending limited discovery and a *Pavey* hearing. Kramer and Hain's motion [79] is denied. This case is set for a telephonic status hearing on August 10, 2021 at 9:30 a.m. to discuss the *Pavey* issues. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

## I.    Background

The following facts are drawn from the Complaint.  All well-pled facts are presumed to be true for purposes of Defendants' motions to dismiss.  See *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).  At all times relevant to the Complaint, Plaintiff was a pretrial detainee at the Kane County Jail ("Jail") in St. Charles, Illinois.  Lewis was the Jail's Director of Corrections.  Dr. Burke was a physician at the Jail and Sanchez was the Jail's medical administrator; both were employed by or contracted with the County.  Kramer was the Kane County Sheriff in charge of inmate facilities at the Jail while Plaintiff was detained, while Hain is the current Kane County Sheriff.

In September 2017, Plaintiff was arrested in Kane County and sent to the Jail.  Around November 25, 2017, he started to develop a rash on his face, which presented similar to severe acne.  The condition persisted and worsened over the next several days, causing a severe burning sensation, facial swelling, and an "unpleasant discharge."  [62] at 4.  Plaintiff, who was 31 years old at the time, had no history of allergies, rashes, or other skin conditions.

Around November 29, 2017, Plaintiff began requesting medical attention.  Initially, there was no response.  Plaintiff "went to the electronic medical kiosk to report his condition and seek the help of a medical professional."  [62] at 4.  By December 1, Plaintiff's condition had deteriorated.  His pain had grown more severe and he began running a fever.  He also developed hives all over his body, which "were leaching out liquid."  *Id*.  Plaintiff banged on the door of his cell, until an officer came and saw his condition.  Eventually, a nurse visited Plaintiff in his cell and gave him an over-the-counter ointment.  The ointment did not help, and his condition continued to deteriorate.  Plaintiff was visited by Sanchez and other Jail employees "on several occasions," but "none provided any effective treatment and refused to provide needed medical assistance or report his needs to another who would provide such treatment."  *Id.* at 5.

On December 4, Dr. Burke saw Plaintiff.  Initially, she "refused to provide any additional treatment other than a skin ointment."  [62] at 5.  On December 5, Plaintiff "requested blood and laboratory testing to help diagnose his condition."  *Id*.  Plaintiff continued to request diagnostic testing and to see a specialist.  On December 13, Plaintiff's blood was drawn.  By this time, "Plaintiff was having trouble swallowing."  *Id*.  Plaintiff was denied his requests to see a specialist. "The only treatment that he was provided was a hydrocortisone cream, a pain killer, and, later, an antibiotic."  *Id*.  None of these treatments provided any relief.

By mid-December, "Plaintiff was in a constant state of agony."  [62] at 5.  Nonetheless, his requests to go to a hospital or see a doctor were ignored, as were his repeated requests to see the results of his bloodwork.  On December 27, 2017, Dr. Burke "informed Plaintiff that his health was not important and that she would fit him in her schedule some other time because his medical needs were not urgent."  *Id*.  The Jail continued to refuse to treat his condition, which continued to worsen.  Dr. Burke visited Plaintiff again in January 2018 and refused to provide any additional treatment.

In early 2018, Plaintiff wrote a handwritten grievance to Sheriff Kramer and Lewis detailing his condition and lack of treatment.  Plaintiff also made an "electronic grievance" through the Jail's kiosk.  Kramer and Lewis "intentionally disregarded Plaintiff's allegations and refused to order any additional necessary medical treatment for him."  [62] at 7.  Plaintiff left the Jail in July 2020.  At no time prior to his discharge did he "ever have the opportunity to see a specialist or go to a hospital for treatment."  *Id*.  "After being denied proper treatment by Defendants, Plaintiff commenced his own treatment protocol that began to ease some of the symptoms of his skin condition."  *Id*.  "This protocol was never suggested" by any of the Defendants.  *Id*.

Based on these facts, Plaintiff asserts three claims under 42 U.S.C. § 1983. In Count I, Plaintiff alleges that Kramer, Lewis, Dr. Burke, and Sanchez violated the Fourteenth Amendment to the U.S. Constitution by denying and delaying him proper medical care for his skin condition. According to the Complaint, these Defendants failed to approve treatment for Plaintiff, including seeing a specialist and going to the hospital, which resulted in Plaintiff suffering unnecessary pain for approximately one year. Count II is a Fourteenth Amendment claim against the County. Plaintiff alleges that the County "maintained policies and practices of denying anything but the most basic of treatments," including referring him to a medical provider specializing in skin conditions. [62] at 11-12. These policies and practices allegedly were promulgated for financial reasons, in disregard for the medical needs of Plaintiff and other inmates. Count III, a Fourteenth Amendment claim against current Sheriff Hain and former Sheriff Kramer, alleges that the Sheriffs created and maintained the policies and practices challenged in Count II. Plaintiff seeks compensatory damages, attorneys' fees, and costs.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that, to state a claim for relief, a complaint "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." "The questions under [this rule] are whether the defendant has fair notice of what he must defend himself against and whether there is some reason to believe he could be found liable at the end of the case." *Williams v. Dart*, 967 F.3d 625, 638 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). For purposes of a motion to

4

dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). However, this "tenet … is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, which "can [be] reject[ed] at the motion to dismiss stage." *Dix v. Edleman Financial Services, LLC*, 978 F.3d 507, 514 (7th Cir. 2020).

The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). The Court may also consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th 2020). In opposing a Rule 12(b)(6) motion, a plaintiff is "free to 'elaborate on … factual allegations so long as the new elaborations are consistent with the pleadings.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 753 n.2 (7th Cir. 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). However, a plaintiff may not use her response to a motion to dismiss to amend the complaint. See *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011); *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 804 (N.D. Ill. 2020).

## III. Analysis

### A. The County

In its motion to dismiss, the County argues that it should be dismissed as a direct defendant in this case because the Kane County Sheriff, rather than the County, is responsible for promulgating policies and procedures at the Jail. See [67] at 1-3. Plaintiff responds that the Complaints is sufficient to state a claim against the County because it alleges that "Defendant's

policies to delay and to deny care have been intentionally promulgated and executed for financial reasons in complete disregard for the medical needs of Plaintiff in an objectively unreasonable manner." [74] at 3.

The County is correct that, as a matter of law, it is not responsible for the policies of the Kane County Sheriff. *Bertha v. Hain*, 787 Fed. Appx. 334, 339 (7th Cir. 2019). This is because "in Illinois a sheriff is an independently elected county officer, not an employee of the county that he or she serves, and the deputies are employees of the Sheriff's Office." *Id*. (citing *Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127, 136-38 (Ill. 2003)). Nonetheless, "the County remains a proper defendant because state law requires it to pay a judgment entered against a sheriff in his official capacity." *Id*.; see also *Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir. 2003) (citing Fed. R. Civ. P. 17, 19). Count III of the Complaint, which the Court declines to dismiss for the reasons explained below, is brought against the Sheriffs in their official capacities. Therefore, the Court will dismiss Count II of the Complaint—which is based on the legally unsupportable premise that the County maintained the Jail's challenged policies and practices regarding medical treatment, see [62] at 11-12—but the County will remain in the case as a Defendant.

### B.    Lewis and Dr. Burke

Lewis, the Jail's Director of Corrections, and Dr. Burke move to dismiss the Complaint on the basis that Plaintiff failed to exhaust his administrative remedies because he "never appealed any of his grievances" concerning the medical care he received at the Jail. [68] at 1. In particular, Lewis explains that the Jail's Detainee Handbook sets forth a grievance procedure, which "requires that an inmate file an appeal within 48 hours of the decision on the original grievance being sent to the detainee." *Id*. at 3. Lewis asserts that although Plaintiff filed a number of grievances related

to his healthcare, and the Jail responded to each one, Plaintiff "failed to appeal any of them" and therefore is "barred from pursuing the claims asserted in this lawsuit." *Id*. Dr. Burke makes the same argument in her motion to dismiss [86], and also attaches unauthenticated Jail records [86-1] that purportedly demonstrate Plaintiff's failure to exhaust. Plaintiff has responded to Lewis' motion, but not to Dr. Burke's more recently filed motion. Plaintiff points out that the Complaint alleges that he did appeal from the denial of his grievance, and the appeal was also denied. See [62] at 6, ¶ 43 ("His grievance was denied as was his appeal of his grievance."). Plaintiff requests that the Court deny Lewis' motion "and, if required, allow discovery necessary for Plaintiff to participate in a subsequent Pavey hearing." [75] at 3.

Exhaustion of administrative remedies "is mandatory" under the Prison Legal Reform Act ("PLRA") and "unexhausted claims cannot be brought in Court." *Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)) (internal quotation marks omitted). Failure to exhaust is an affirmative defense, on which the defendant bears the burden of proof. *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). Defendants have not yet met this burden, as Lewis has not provided any evidentiary support for his motion, and Dr. Burke's evidence has not been authenticated. Plaintiff also has not had a chance to conduct discovery on exhaustion. Therefore, the Court finds it appropriate to deny both motions to dismiss without prejudice, subject to renewal after Plaintiff has been allowed to conduct limited discovery on exhaustion and the parties have participated in a *Pavey* hearing, the purpose of which is "to resolve disputed factual questions that bear on exhaustion, including what steps were taken and whether the futility exception might apply." *Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015).

### C.    Kramer and Hain

#### 1.    Count I

Count I is brought against former Kane County Sheriff Kramer in his individual capacity. Count I alleges that Kramer was deliberately indifferent to Plaintiff's serious medical condition because he "fail[ed] to approve treatment for Plaintiff despite his requests and needs." [62] at 9, ¶ 59. Count I further alleges that Kramer "knew that denying treatment and refusing to allow Plaintiff to see a specialist was an excessive risk to Plaintiff's health," which Kramer "consciously disregarded … in a manner that was objectively unreasonable." *Id*. Kramer argues that this allegation, "without more, is implausible to create personal responsibility, as a sheriff would not be involved in the day-to-day medical decision-making for inmates." [79-1] at 3.[1]

"A § 1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (citing *Miranda v. County of Lake*, 900 F.3d 335, 346–47 (7th Cir. 2018)). Claims brought by pretrial detainees are subject to an "objective reasonableness" standard. *Id*. This requires a "twofold showing" by the plaintiff: "First, he must show that the defendant acted purposefully, knowingly, or recklessly when considering the consequences of his response to the medical condition at issue in the case. Second, the plaintiff must show that the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances." *Id*.; see also *Turner v. Paul*, 953 F.3d 1011, 1015 (7th Cir. 2020). The Court will "not find a jail official to have acted with deliberate indifference if she reasonably relied on the

---

[1] Kramer also seeks to dismiss Count I to the extent that Plaintiff intended to bring it as a *Monell* claim against Kramer in his official capacity. But Plaintiff makes clear in response that "Count I is … against Kramer in his individual capacity only." [84] at 2, n1. Count III is Plaintiff's *Monell* claim against Kramer and Hain in their official capacities; that claim is considered separately below.

judgment of medical personnel." *Miranda*, 900 F.3d at 343. "On the other hand, if jail officials had reason to know that their medical staff were failing to treat or inadequately treating an inmate, liability is possible." *Id.*; see also *McCann v. Ogle County, Illinois*, 909 F.3d 881, 888 (7th Cir. 2018).

Plaintiff's allegations against Kramer are sufficient to state a claim for inadequate medical care. Plaintiff alleges that in early 2018, he wrote a handwritten grievance to Kramer "detailing his condition and lack of treatment." [62] at 6. Although the complaint does not specify exactly what Plaintiff put in the grievance, it is reasonable to infer from the Complaint's preceding allegations that he informed Kramer that had a severe rash, which was causing him to "hav[e] trouble swallowing" and put him in "a constant state of agony"; that Dr. Burke had refused him any additional treatment, refused to send him to a hospital, and told him that "his health" and "medical needs were not important"; and that his condition was continuing to worsen. *Id.* at 5. Despite this information, Kramer allegedly denied his grievance and the appeal of his grievance. *Id.* at 6. There is nothing in the Complaint to suggest that Kramer consulted with Dr. Burke and "received assurances" about Plaintiff's treatment, "requested periodic updates on h[is] condition," or did anything to ensure that Dr. Burke or other medical personnel "were on the case." *Miranda*, 900 F.3d at 343. At this early stage of the litigation, this is enough to plausibly suggest that Kramer had reason to know that the Jail's medical staff were "inadequately treating" Plaintiff, yet took no action to rectify the situation, despite being in charge of handling detainees' medical grievances. *Id.* Therefore, Kramer's motion to dismiss Count I is denied.

### 2.    Count III

Count III of the Complaint is brought against Kramer and Hain in their official capacities as the current and former Sheriffs of Kane County, respectively. The Complaint alleges that the

Sheriffs "created and maintained policies and practices of denying anything but the most basic of treatments, including denying access to medical treatment that would have improved Plaintiff's condition." [62] at 13. The "policies to delay and to deny care have been intentionally promulgated and executed for financial reasons in complete disregard for the medical needs of Plaintiff." *Id*. at 13-14. They allegedly "prohibited Plaintiff from seeing a medical provider specializing in skin conditions," which caused Plaintiff "to spend almost a year of his life in discomfort and agony." *Id*. at 13.

Kramer and Hain argue that Count III must be dismissed because it fails to state a viable *Monell* claim, as "Plaintiff has not asserted any facts which would support that the alleged failure to treat arises from a true wide-spread custom or practice for the purposes of acting unconstitutionally, that these same issues have arisen many times, that the government entity acquiesced in the outcome, [or] this was not an isolated incident." [79-1] at 6; see also *id*. at 8-9.

Plaintiff's "claims against the Sheriffs in their official capacities are really against the Kane County Sheriff's Office." *Bertha*, 787 Fed. Appx. at 339.) Municipalities and other units of local government, like the County Sheriff's Office, "do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents. Only actions of the entity will suffice." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021); see also *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978). "Accordingly, to prevail on a § 1983 claim against a municipality under *Monell*, a plaintiff must challenge conduct that is properly attributable to the municipality itself." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). The Seventh Circuit has "interpreted this language to include three types of actions that can support municipal liability under § 1983: '(1) an express policy that causes

a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). "The central question under *Monell* is 'always whether an official policy, however expressed[,] ... caused the constitutional deprivation.'" *Turner*, 953 F.3d at 1016 (quoting *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 378 (7th Cir. 2017)). Although *Monell* claims are not subject to a heightened pleading standard, *see Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001), *Baskins v. Gilmore*, 2018 WL 4699847, at *3 (N.D. Ill. Sept. 30, 2018), they must be based on "some specific facts" and "cannot simply rely on legal conclusions and conclusory allegations," *id.* (quoting *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011)) (internal quotation marks omitted).

Plaintiff's *Monell* claim alleges, in essence, that the Sheriffs maintained a policy or widespread practice of denying anything but the most basic of medical treatments—including denying access to outside specialists—in order to cut costs and without regard to the medical needs of those in their custody. Even after Plaintiff allegedly complained of hives covering his body, fever, pain, and difficulty breathing, Dr. Burke allegedly told him that his medical needs were not important or urgent and refused to send him to a specialist, and Kramer upheld that decision. As a result, Plaintiff allegedly was forced to suffer unnecessary pain for nearly a year.

Although the Complaint's allegations concerning the specific policy or widespread practice at issue are not particularly detailed or robust, many courts in this district have found similar allegations sufficient to support a *Monell* claim. For instance, in *Simmons v. Godinez*, 2017 WL 3568408 (N.D. Ill. Aug. 16, 2017), the court denied a motion to dismiss a *Monell* deliberate indifference claim that was based on allegations that Stateville Correctional Center's medical

11

provider, Wexford, had a "policy of cutting costs in prisoner care"; that "Wexford and its employees denied him access to a specialist and to appropriate diagnostic testing" for his back pain; and that two medical employees told him that "they would not pay for him to see another doctor to do a job they were already doing." *Id*. at *4. This policy allegedly caused Plaintiff to suffer from severe, undiagnosed back pain for more than two years. *Id.*; see also *Harper v. Wexford Health Sources, Inc.*, 2017 WL 2672299, at *3 (N.D. Ill. June 21, 2017) (denying defendant's motion to dismiss because plaintiff alleged a specific policy, namely cost-cutting measures, that resulted in plaintiff receiving inadequate medical care); *Shaw v. Obaisi*, 2015 WL 638521, at *4 (N.D. Ill. Feb. 12, 2015) (denying defendants' motion to dismiss because plaintiff alleged that Wexford's policies include "refusing or delaying medical treatment ... [and] delaying or refusing to provide prescribed pain medication to lower costs"); *Watkins v. Ghosh*, 2011 WL 5981006, at *8 (N.D. Ill. Nov. 28, 2011) (denying defendants' motion to dismiss because plaintiff alleged that "[r]ather than referring patients who suffer from [health issues] to outside specialists, Wexford simply denies them treatment in an effort to cut costs").

The Sheriffs argue that Plaintiff cannot rely solely on his personal experience with the Jail's health care system as a basis for his *Monell* claim. But "the Seventh Circuit [has] indicated that at the motion to dismiss stage, a plaintiff may rely solely on his own experience to state a *Monell* claim rather than having to plead examples of other individuals' experiences." *Zavala v. Damon*, 2018 WL 3438945, at *3 (N.D. Ill. July 17, 2018) (citing *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (holding that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process")); see also *Williams v. City of Chicago*, 2017 WL 3169065, at *9 (N.D. Ill. 2017) ("Post-*White* courts analyzing *Monell* claims similarly have 'scotched motions to dismiss' premised on

arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (quoting *Stokes v. Ewing*, 2017 WL 2224882, at *4 (N.D. Ill. May 22, 2017), and collecting cases)). Instead, "[i]n determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018) (citing *Carmona v. City of Chicago*, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018)). Plaintiff's allegations that he was repeatedly denied additional treatment and referral to a specialist, even as his condition worsened and he grieved the lack of medical treatment, plausibly suggest that his injury was caused by a policy or widespread practice, rather than the isolated decisions of particular Jail employees. Therefore, the Court denies the Sheriff's motion to dismiss Count III of the Complaint. The Court notes, however, that if it ultimately finds that Plaintiff failed to exhaust his administrative remedies prior to filing suit, the claims that have survived dismissal in this order will be dismissed, as well.

## IV. Conclusion

For these reasons, the County's motion to dismiss [67] is granted in part and denied in part; Count II of the Complaint is dismissed but the County will remain a Defendant to Plaintiff's suit. Lewis' motion to dismiss [68] and Burke's motion to dismiss [86] are both denied without prejudice pending limited discovery and a *Pavey* hearing. Kramer and Hain's motion to dismiss [79] is denied. This case is set for a telephonic status hearing on August 10, 2021 at 9:30 a.m. to discuss the *Pavey* issues. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

Dated: August 2, 2021

Robert M. Dow, Jr.
United States District Judge